JUNE PLEMMONS AND HUSBAND, JAMES PLEMMONS, v. MATILDA CUT-
   SHALL AND HUSBAND, E. L. CUTSHALL; SHERMAN TWEED AND WIFE,
   BELLE TWEED; CHAPEL TWEED AND WIFE, MRS. CHAPEL TWEED;
   ALL THE UNKNOWN HEIRS OF ABNER TWEED, DECEASED; ANN GIL-
   BERT, DECEASED; LULA MORGAN HEIRS, DECEASED; HESTER STAN-
   TON, DECEASED; MAGNOLIA FARMER, DECEASED; JOSHUA TWEED,
   DECEASED. LUTHER TWEED, AND ALL OTHER HEIRS KNOWN AND UN-
   KNOWN, WHO ARE NECESSARY PARTIES HERETO.

(Filed 21 November, 1951.)

**1. Boundaries § 11— .**

   Where in a processioning proceeding each side admits that the other owns adjoining land, and respondents further aver adverse possession of the land owned by them, *held* no issue of title is raised, the sole issue being as to the true location of the dividing line between the lands of the respective parties.

**2. Boundaries § 9—**

   The burden of proof on the issue as to the true location of the dividing line is upon petitioners.

**3. Boundaries § 6—**

   In a processioning proceeding, what constitutes the true dividing line is a question of law for the court, its location is a question of fact for the jury under correct instructions based upon competent evidence.

**4. Boundaries § 5a: Frauds, Statute of, § 9—**

Description of land in a deed must be certain in itself or capable of being reduced to certainty by matters *aliunde* pointed out in the deed itself.

**5. Boundaries § 5h—**

A deed describing the land by reference to corners and lines of the adjacent lands is sufficient to admit proof of such adjacent corners and lines, the call for another's line being considered one to a natural boundary, and the best evidence thereof being the record of a deed covering such corners or lines followed by the fitting of the description to the land in accordance with appropriate rules.

**6. Boundaries § 3c—**

Ordinarily a line should be run in its regular order from a known beginning, and it is only when a corner cannot be ascertained by running forward and may be fixed with certainty by running reversely that the call may be reversed.

**7. Boundaries § 10—**

A processioning proceeding may not be dismissed as in case of nonsuit, but peremptory instructions may be requested in appropriate cases.

VALENTINE, J., took no part in the consideration or decision of this case.

APPEAL by respondents from *Bennett, Special Judge,* at June Civil Term, 1951, of MADISON.

Procession proceeding to establish the true dividing lines between the lands of petitioners and of respondents.

Petitioners allege in their petition (2) that they are the owners in fee and are in possession of a tract of land situate, lying and being on waters of Shelton Laurel in No. 2 Township in Madison County, described as follows:

"BEGINNING on a Spanish Oak Stump, the Joshua Tweed corner, and running a southwest direction with the Joshua Tweed line to a hemlock and oak in said line (being the southeast corner of the Joshua Tweed 50-acre Mill tract), then a northerly direction with the east line of the Joshua Tweed Mill tract to a stake the northeast corner of said mill tract, thence to the top of Big Hill Ridge with the Mack tract line to a black oak, thence down Big Hill Ridge with Gilliad Tweed's line to a white oak stump—Gilliad Tweed's corner—thence continuing with Gilliad Tweed's line to a Woodward Hensley's line, then up and with the meanders of a ridge to Lowery Cutshall's line then with Lowery Cutshall's line to the BEGINNING. Containing thirty acres more or less.

"(3) That the respondents are the owners, or claim some interests in lands adjoining the lands described in the next preceding paragraph, and the boundary lines between the lands of the petitioners and the respond-

ents are in dispute, and the same cannot be settled by compromise or agreement.

"(4) That the lines that are in dispute are described in petitioners' boundary as follows: 'BEGINNING on a Spanish oak stump, the Joshua Tweed corner, and running a southwest direction with the Joshua Tweed line to a hemlock and oak in said line, (being the southeast corner of the Joshua Tweed 50-acre Mill tract), and then a northerly direction with the east line of the Joshua Tweed Mill tract to a stake, the northeast corner of said Mill tract, thence to the top of the Big Hill Ridge with the Mack tract line, to a black oak.' "

On the other hand, the record on this appeal contains four separate answers, (1) by the original respondents, (2) by the original respondents and Chapel Tweed and numerous others, allegedly having been made parties hereto by order of court, (3) by Atman Cutshall, *et al.*, allegedly having been made parties hereto by order of court, and (4) Mrs. Linda Fox, *et al.*, who describe themselves as heirs at law of Joshua Tweed. In all of these answers the respondents admit that the petitioners own land adjoining the lands of respondents. And while in the second and third answers as above recited, it is averred that the allegations of the petition as to ownership of land as therein described, and of the disputed line are denied,—the denials are followed immediately by admission that "petitioners have a title to some land adjoining the lands of respondents," and that "the petitioners and respondents are owners of lands adjoining each other." But respondents deny that there is any dispute as to their boundary lines. They further aver that they are the owners of (1) the 400 acres Joshua Tweed land, the corner and line of which are first referred to in the description of petitioners' land as set out in the petition, (2) the Joshua Tweed 50-acre Mill tract, corners and line of which are next referred to in said description, and (3) the Mack tract, next referred to in said description. Specific descriptions of these tracts are set out. And respondents say that the lines and boundaries thereof are known and visible; that they have had adverse possession of the land for more than seven years, and twenty years, the statutes as to which they plead in bar of petitioners' right to recover.

The cause was transferred to the civil issue docket for trial, and tried in Superior Court.

Upon the trial in Superior Court, summarily stated, the petitioners offered in evidence the record of the deed to *feme* petitioner for the land described as in the petition, and undertook to locate same by oral testimony in respect to calls in the descriptions of the respondents' lands, without first introducing in evidence the records of the deeds in which such descriptions appear. Respondents objected to much of it, and here challenge the ruling of the court in admitting it.

Petitioners offered testimony as to possession by them and those under whom they claim title, of the lands they allege they own as set out in the petition.

Motions for judgment as of nonsuit were made by respondents when petitioners first rested. Overrued. Exception.

And respondents reserving exception to denial of motion for nonsuit, offered in evidence the records of deeds under which they assert ownership of the three tracts they aver in their answers they own, and offered testimony tending to locate same as they contend the true location to be.

Motions of respondents for judgment as of nonsuit at close of all the evidence were denied, and they excepted.

Respondents tendered seven issues, the first three of which are these:

"(1) Are the plaintiffs the owners of the tract embraced on the map by the blue lines between 3, 4, 5, 6 and 3?

"(2) What is the true dividing line between the lands of the plaintiffs and the defendants Atman Cutshall and McClellan Cutshall?

"(3) What is the true dividing line between the plaintiffs and the defendants?"

The next four related to adverse possession by defendant E. A. Tweed heirs,—for seven years, and for twenty years as to each of two portions of land shown on the map.

The record shows that the first three were "granted" and the last four "denied." Exception #1.

But the record shows that the court submitted these issues, which the jury answered as shown:

"1. What is the true dividing line between plaintiffs and the Tweed heirs?

"Answer: 2, 3, 4 and 5.

"2. Have the Tweed heirs been in the adverse possession of the diamond-shaped tract as shown on the map for seven years under color of title, as alleged in the Answer?

"Answer: No.

"3. Have the Tweed heirs been in the adverse possession of the diamond-shaped tract as shown on the map for twenty years as alleged in the Answer?

"Answer: No.

"4. What is the true dividing line between plaintiffs and defendants Atman Cutshall, McClellan Cutshall and Mamie Banks?

"Answer: 1-2.

"5. Have the defendants, Tweed heirs, been in the adverse possession of the property embraced in the lines A, B, C and L for seven years under color of title, as alleged in the Answers?

"Answer: No.

"6. Have the defendants, Tweed heirs, been in the adverse possession of the property embraced in the lines A, B, C and L for twenty years, as alleged in the Answers?

"Answer: No."

Exception #2.

From judgment in accordance with the verdict, the respondents appeal to Supreme Court and assign error.

*George M. Pritchard and Calvin R. Edney for petitioners, appellees.*
*Carl R. Stuart for respondents, appellants.*

WINBORNE, J. It is apparent from the record and statement of case on this appeal that in the trial court there was a misconception on all hands as to the issues raised by the pleadings.

A reading of the petition reveals the express purpose of the proceeding to be the establishment of boundary lines between lands of petitioners and lands of respondents. Chapter 38 of General Statutes of North Carolina. Petitioners allege that they are the owners of a tract of land whose boundaries are the boundaries of lands they allege are owned by respondents.

Also a perusal of the answers shows that respondents admit that petitioners own land adjoining the land they, the respondents, expressly aver they own, and of which they have had adverse possession for more than seven years under color of title,—yea, more than twenty years under known and visible lines and boundaries.

Thus no issue of title is raised,—either as to the lands of petitioners, or as to the lands of respondents. So, after all the underbrush is cleared away, the pleadings raise only the issue as to "What is the true dividing line between the lands of petitioners and the lands of respondents?" See *Greer v. Hayes,* 216 N.C. 396, 5 S.E. 2d 169; *Cornelison v. Hammond,* 225 N.C. 535, 35 S.E. 2d 633.

Hence there was error in submitting other issues.

The burden of proof on the issue as to the true location of the dividing line is upon the petitioners. This is accordant with the well settled rule enunciated in decisions of this Court, among which are these: *Hill v. Dalton,* 140 N.C. 9, 52 S.E. 273; *Woody v. Fountain,* 143 N.C. 66, 55 S.E. 425; *Garris v. Harrington,* 167 N.C. 86, 83 S.E. 253; *Carr v. Bizzell,* 192 N.C. 212, 134 S.E. 462; *Greer v. Hayes, supra; Hill v. Young,* 217 N.C. 114, 6 S.E. 2d 830.

Also it is settled law in this State that, in a proceeding to establish a boundary line, which is in dispute, what constitutes the dividing line is a question of law for the court, but a controversy as to where the line is must be settled by the jury under correct instructions based upon compe-

tent evidence. See *Clegg v. Canady,* 217 N.C. 433, 8 S.E. 2d 246; *Huffman v. Pearson,* 222 N.C. 193, 22 S.E. 2d 440, and cases cited. See also *Brown v. Hodges,* 232 N.C. 537, 61 S.E. 2d 603.

Moreover, it is noted that respondents in the case in hand aver in the original answer that the description set forth in the petition is too indefinite to describe the petitioners' land with any certainty. As to this averment, the decisions of this Court generally recognize the principle that a deed conveying land within the meaning of the statute of frauds must contain a description of the land, the subject matter of the deed, either certain in itself or capable of being reduced to certainty by reference to something extrinsic to which the deed refers. The office of description is to furnish, and is sufficient when it does furnish, means of identifying the land intended to be conveyed. The deed itself must point to the source from which evidence *aliunde* to make the description complete is to be sought. See *Self Help Corp. v. Brinkley,* 215 N.C. 615, 2 S.E. 2d 889, and cases cited.

Testing the description of petitioners' land by this principle, it appears to be sufficient to admit of such proof.

So, in the light of these principles, petitioners in present case have the burden of locating the lines and corners called for in the description of their land. And since the beginning is designated as "a Spanish oak stump, the Joshua Tweed corner," and the first call runs "a southwest direction with the Joshua Tweed line to a hemlock and oak in said line," it is incumbent upon petitioners to locate this corner and the line of the Joshua Tweed tract,—the call for another's line being considered a natural boundary. See *Clegg v. Canady, supra.* In locating such corner and line, the best evidence of the calls in the description of this tract is the record of a deed covering it. *Woodbury v. Evans,* 122 N.C. 779, 30 S.E. 2. Then the description therein may be fitted to the land in accordance with appropriate rules. See *Locklear v. Oxendine,* 233 N.C. 710, 65 S.E. 2d 673, and cases cited.

In the *Locklear case* it is said that the general rule is that in order to locate a boundary of land, the lines should be run in the regular order from a known beginning, and the test of reversing in the progress of the survey should be resorted to only when the terminus of a call cannot be ascertained by running forward, but can be fixed with certainty by running reversely the next succeeding line.

In like manner the burden is upon the petitioners to locate the corners and line of the 50-acre Mill tract, and the line of the Mack tract—called for in the description of their land.

When these three tracts are so properly located, the lines called for will constitute the true dividing line between the lands of petitioners and of respondents.

Thus it is clear, and we hold, that the course pursued by petitioners as appears in statement of facts hereinabove, in undertaking to develop their case on the trial below, is violative of pertinent rules of evidence, and prejudicial to respondents.

As to exceptions to refusal of the trial court to allow motions, aptly made, for judgment as of nonsuit: Where, in a processioning proceeding, the only real controversy is as to the location of the dividing line between the lands of the petitioners and of the respondents the cause should not be dismissed as in case of nonsuit.

See *Cornelison v. Hammond, supra,* where the subject has been fully discussed and applied in opinion by *Barnhill, J.* See also *Brown v. Hodges,* 230 N.C. 746, 55 S.E. 2d 498. In lieu of such motion, request for peremptory instruction may be appropriate in a proper case.

Finally, since there must be a new trial for error pointed out, the other exceptions are not expressly treated.

New trial.

VALENTINE, J., took no part in the consideration or decision of this case.